## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**MERAKI INSTALLERS LLC,**

      **Plaintiff/Counter Defendant,**

**v.**                                    **CASE NO. 3:25-cv-18-MCR-HTC**

**NEW EAST SOLAR ENERGY**
**(AMERICA) INC.,**

      **Defendant/Counter Claimant.**
_____/

### ORDER

Plaintiff/Counter-Defendant Meraki Installers LLC ("Meraki") has moved to dismiss Defendant/Counter-Claimant New East Solar Energy (America) Inc.'s ("NE Solar"), ECF No. 18, First Amended Counterclaim, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 20. NE Solar opposes the motion. ECF No. 23. After full consideration of the parties' arguments and for the following reasons, the Court concludes that Meraki's motion is due to be granted in part and denied in part.

## I.    Background

NE Solar manufactures solar panels and related materials, which Meraki purchases and installs. The Parties' dispute relates to unfulfilled purchase orders for these materials. Meraki alleges that from November 17, 2021, through October 13,

2022, it made payments to NE Solar on various purchase order invoices.[1]  Meraki further alleges that it overpaid by $223,747.92 for 1,419 solar panels it no longer needed, and NE Solar refused to refund the deposit payment.[2]  Meraki also asserts it overpaid by $44,241.34 on two purchase orders (Nos. 24644-2 and 24644-3) and that NE Solar refused to refund the overcharge.  As a result, Meraki filed suit seeking to recover the funds, raising claims of civil theft, conversion, and unjust enrichment.

NE Solar filed an Amended Counterclaim in response, asserting that Meraki breached the contract by agreeing to order 20,150 solar modules but then failing to take delivery and pay for them all.  In support, NE Solar alleges that in the course of the business dealings between the companies, an alleged affiliate of Meraki's ordered the 20,150 solar modules under Purchase Order No. M24644, for which Meraki purportedly made a 5% down payment in the amount of $149,669.16. Meraki took over outgoing communications concerning the purchase order on December 6, 2021, when the affiliate informed NE Solar that "Meraki [would] be reaching out for status updates and inquiries for [Purchase Order] M24644."  ECF No. 18 at 16, ¶ 6.  On May 25, 2022, Meraki did request an update by email referencing "Meraki Order M24644."  *Id.* at ¶ 7.  NE Solar alleges that Meraki thus

---

[1] The invoices listed are: M24644-1, M24644-1C, M24644-2, M24644-3, and M24644-4. *See* ECF No. 1-1 (Exhibit A).

[2] Meraki purportedly paid for and was expecting to receive 7,867 panels from NE Solar but received only 6,448.  ECF No. 1 at ¶ 11.  The $223,747.92 that NE Solar allegedly retained seemingly represents the 1,419 panels allegedly missing from the delivery.  *Id.*

posed no objection to and was the only source of payment on Purchase Order M24644.

On August 17, 2022, Meraki's Supply Chain Manager Dean Holleman emailed a new purchase order to NE Solar, Purchase Order No. 2802, to which NE Solar also alleges no objection was raised.  ECF No. 18-5; [3] ECF No. 18 at 17, ¶ 13. The email modified the model type for "the remaining 13,702 modules" to be delivered on the order and concludes with the valediction, "Thanks, Dean."  ECF No. 18 at 16–17, ¶¶ 11–12.  It is these 13,702 solar modules that NE Solar contends Meraki must still "take delivery . . . and pay."  *Id.* at 17, ¶ 16.  According to the Amended Counterclaim, Meraki has allegedly paid for and accepted 6,448 out of a total 20,150 modules but has left unsatisfied the "total contract price," the final installment of which was owed "five days before the modules reach[ed] the U.S. Port" and is now "overdue."  *Id.* at 17–18; ECF No. 18-8 at 3.

NE Solar further alleges in the Amended Counterclaim that Meraki failed to pay "the balance of $1,966,385.91 . . . representing the 13,702 . . . modules that have yet to be delivered,"  ECF No. 18 at 18, ¶ 19, and repudiated the contract by not responding to NE Solar's request for adequate assurance of performance, *see* Fla. Stat. § 672.609.  Alleging the breach of contract or promissory estoppel (in the

---

[3] "Exhibits to the complaint are considered a part of the complaint for all purposes, Fed. R. Civ. P. 10(c), and may therefore be considered in deciding a motion to dismiss."  *Lawrence v. United States*, 597 F. App'x 599, 603 (11th Cir. 2015).

alternative) (Counts I and II), NE Solar seeks to recover its lost profits on that unfulfilled portion of the contract, alleged in the amount of $910,223.86, and the loss of $135,046.91 allegedly spent on raw materials under Meraki's order.[4]

NE Solar also gave Meraki statutory notice that its civil theft claim lacked substantial factual or legal support and thus NE Solar seeks reimbursement for its fees and costs in this litigation, pursuant to Fla. Stat. § 772.11, which is asserted both within the contract claim in Count I and as a stand-alone claim in Count III.

## II.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) tasks the pleader with alleging "a short and plain statement" asserting its entitlement to relief.  Fed. R. Civ. P. 8(a)(2).  A counterclaim is therefore duly subject to dismissal where its allegations "fail[] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); *Whitney Info. Network, Inc. v. Gagnon*, 353 F. Supp. 2d 1208, 1210 (M.D. Fla. 2005) ("A motion to dismiss a counterclaim under [Rule] 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint.").  Whether or not a counterclaim successfully states a claim pursuant to Rule 12(b)(6) turns on the plausibility of its factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To be plausible, the allegations must "raise a right to relief above the speculative level" by

---

[4] Florida law provides that the measure of damages for repudiation includes lost profits "together with any incidental damages provided in this chapter (s. 672.710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale."  Fla. Stat. § 672.708.

"allow[ing] the court to draw the reasonable inference that the [counter-]defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 663.  The pleading need not allege with extensive factual detail the basis for the pleader's claim, but sole reliance on mere "labels and conclusions" will preclude plausibility.  *Twombly*, 550 U.S. at 555.

## III.    Discussion

The present suit invokes the Court's diversity jurisdiction.  Under 28 U.S.C. § 1332(a)(1), the Court has "original jurisdiction of all civil actions where the matter in controversy exceeds . . . $75,000 . . . and is between citizens of different States." The Court is satisfied that the jurisdictional prerequisites for diversity jurisdiction are met.[5]  Florida law governs these state law claims.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

### A. Breach of Contract (Count I)

Count I of NE Solar's Amended Counterclaim alleges Meraki's material breach of a "valid written contract" between the companies.  ECF No. 18 at 21, ¶ 39. Meraki argues that this claim is implausible because any alleged contract "lacks

---

[5] It is alleged that Defendant/Counter-Claimant is a California corporation having its principal place of business in the State of California, and a supplemental disclosure statement shows that all members of Plaintiff/Counter-Defendant are citizens of the State of Florida.  *See* ECF Nos. 1, 25.  The damages alleged exceed $75,000.  ECF No. 1 at 2.

signatures from either party" and excludes terms essential to determining the extent of the alleged breach.  ECF No. 20 at 5–6.  The Court disagrees.

The Uniform Commercial Code's ("UCC's")[6] Statute of Frauds, adopted by Florida law, Fla. Stat. § 672.201, weeds out implausible claims much in the same way as a Rule 12(b)(6) motion to dismiss, "intercept[ing] the frequency and success of actions [that are] based on nothing more than loose verbal statements or mere innuendos."  *United States Distribs., Inc. v. Block*, No. 09–21635–CIV, 2009 WL 3295099, at *5 (S.D. Fla. Oct. 13, 2009) (quoting *Tanenbaum v. Biscayne Osteopathic Hosp., Inc.*, 190 So. 2d 777, 779 (Fla. 1966)).  To that end, the statute conditions the enforceability of any contract for a sale of goods valued at $500 or more on whether a writing has been signed by the party—or the party's "authorized agent"—against whom it is being enforced.  Fla. Stat. § 672.201(1) (requiring "some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent").[7]  If the contract is comprised of more than one writing and at

---

[6] The UCC governs transactions in goods, or those concerning existing, movable items, other than money.  *Am. Zurich Ins. Co. v. St. George Crystal, Ltd.*, 870 So. 2d 243, 245 (Fla. 2d DCA 2004); Fla. Stat. § 672.105 (definition of "goods").  The alleged contract between Meraki and NE Solar concerns the purchase and delivery of solar panels, which fall within the UCC's definition of "goods."  As such, the UCC governs the instant case.

[7] Section 672.201(1), amended on May 21, 2025 (effective July 1, 2025), now reads, "[A] contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is a *record* sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by *the party's* authorized agent or broker.  A *record* is not insufficient because it omits or incorrectly

least one bears the signature of the party to be charged, such writings may be aggregated to determine the extent of the contract. *Block*, 2009 WL 3295099 at *5 (quoting *Kolski v. Kolski*, 731 So. 2d 169, 171 (Fla. 3d DCA 1999)). Florida law interprets this writing requirement broadly and attributes the same weight to written and electronic signatures. *Id.* ("Florida courts are flexible as to what kinds of documents satisfy the writing requirement."); *id.* ("Florida law provides that electronic signatures 'may be used to sign a writing and shall have the same force and effect as a written signature.'") (quoting Fla. Stat. § 668.004).

A plausible contract claim under Florida law requires: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile United States, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009); *Contractor Tool Supply, Inc. v. JPW Indus., Inc.*, No. 5:24-cv-347-JA-PRL, 2025 WL 1295324, at *3 (M.D. Fla. May 5, 2025). Plausibility further demands allegations of an offer, acceptance, consideration, and the sufficient specification of essential terms. *Vega*, 564 F.3d at 1272. Under Florida's UCC, both a signature by the party to be charged with enforcement of the contract and a stated quantity of goods are terms indispensable to a plausible breach of contract claim. Fla. Stat. § 672.201(1); *Off. Pavilion S. Fla., Inc. v. ASAL Prods., Inc.*, 849 So. 2d 367, 371

---

states a term agreed upon but the contract is not enforceable under this *subsection* beyond the quantity of goods shown in the *record*." Fla. Stat. § 672.201(1) (eff. July 1, 2025) (emphasis added to show the new wording).

(Fla. 4th DCA 2003) ("[W]ithout a quantity term, [a] contract would be unenforceable under . . . section [672.201(1)].").

The Court finds all of the allegations on which plausibility rests present in Count I of the instant Amended Counterclaim.  NE Solar has alleged the existence of a written contract—in the form of a purchase order—for a sale of 20,150 solar modules, with 13,702 solar modules remaining to be delivered, its own readiness to provide Meraki with the modules at issue, and Meraki's unilateral and material breach.  ECF No. 18 at 15–20, ¶¶ 1–33 (showing allegations of Meraki's failure to pay for and accept delivery of the required quantity, valued at $1,966,385.91).  These allegations preclude a finding, "as a matter of law, [that] there was no contract formed between the parties under the UCC."  *Contractor Tool Supply*, 2025 WL 1295324 at *3 (holding that a party's allegations plausibly state a claim for breach of contract under Florida law where the party alleges a written agreement, a definite number of goods, an agreed-upon price, and the adverse party's unilateral breach). And NE Solar's contention that "Thanks, Dean" suffices as a signature comports with other decisions of this Court.  ECF No. 23 at 5; *US Iron FLA, LLC v. GMA Garnett (USA) Corp.*, 660 F. Supp. 3d 1212, 1223 (N.D. Fla. 2023) (finding that "Best Regards, Brianna" was a valid email signature under Florida law because it was "sufficient to authenticate the email" and to "establish[] its logical association with the revised terms proposed in the email").  NE Solar's allegations of Meraki's

partial performance[8] also support Count I's plausibility. *Block*, 2009 WL 3295099 at *5 (finding that attached emails signed by a party's "alleged agent[]"[9] satisfy the Statute of Frauds and noting that "partial performance of [a party's] obligations underscores . . . an agreement with the [opposing party]").

And even if the aforementioned allegations were implausible, NE Solar's breach of contract claim succeeds on yet another front—the merchant exception. *See* Fla. Stat. § 672.201(2). The Court "need not decide whether the merchant exception applies [where a writing] satisfies the Statute of Frauds" but nonetheless finds here that NE Solar's allegations qualify. *US Iron*, 660 F. Supp. 3d at 1223. Under Fla. Stat. § 672.201(2), a written contract, the contents of which the receiving party has reason to know, is enforceable as between merchants[10] unless the party against whom the contract is being enforced objects to the contract in writing within ten days of receipt. Fla. Stat. § 672.201(2) (stating a "writing in confirmation of the contract" is validated "unless written notice of objection to its contents is given within [ten]

---

[8] NE Solar denies that Meraki is entitled to a refund and alleges instead that Meraki assented to the contract, accepted partial delivery of 6,448 out of a total 20,150 solar modules, and repudiated its contractual obligations as to the remaining modules. ECF No. 18 at 17, ¶ 14–15.

[9] NE Solar has attached to its Amended Counterclaim an email from Meraki's Supply Chain Manager seeking confirmation of NE Solar's receipt of Meraki's request to change the model of the 13,702 modules from 365W to 370W. ECF No. 18-5.

[10] A merchant is one who deals in goods of a certain kind or one who possesses specialized knowledge of the goods constituting a transaction. Fla. Stat. § 672.104 (definition of "merchant").

days after it is received").[11]  Failure to object to a contract "take[s] away from [a

merchant] the defense of the Statute of Frauds." *Fertilizantes Tocantins S.A. v. TGO*

*Agric. (US), Inc.*, 599 F. Supp. 3d 1193, 1205 (M.D. Fla. 2022).  The provision

further requires that a "written memorandum [be] sent within a reasonable time that

contains the essential terms of an enforceable contract, including quantity." *Gulf*

*Coast Produce, Inc. v. Am.  Growers, Inc.*, No. 07–80633–CIV, 2010 WL 1410558,

at *4 (S.D. Fla. Mar. 31, 2010).  NE Solar argues that Meraki admitted in its

Complaint that NE Solar is a merchant.  ECF No. 23 at 6 (citing ECF No. 1 at ¶ 8)

(arguing Meraki's allegation that "Plaintiff and Defendant were engaged in a

business relationship with each other wherein Plaintiff would remit payment to

Defendant in exchange for certain solar panel modules and materials" constitutes

Meraki's admission of its merchant status).  Also, Meraki's own allegation that NE

Solar is "a solar panel and material manufacturer" is consistent with the definition

of a merchant found in Fla. Stat. § 672.104.  ECF No. 1 at ¶ 5.  These admissions,

together with NE Solar's allegations that the purchase orders constitute a written

contract, that 13,702 solar modules of a stated model remain at issue, and that Meraki

---

[11] Section 672.201(2), amended as of May 21, 2025, (but not effective until July 1, 2025) now reads, "Between merchants if within a reasonable time a *record* in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against *the* party unless notice *in a record* of objection to its contents is given within 10 days after it is received."  Fla. Stat. § 672.201(2) (eff. July 1, 2025) (emphasis added to show the new wording).

failed to object to either purchase order, combine to set out a plausible breach of contract claim pursuant to the merchant exception of Fla. Stat. § 672.201(2). *Bonilla v. Crystal Graphics Equip., Inc.*, No. 11– 21470–Civ, 2012 WL 360145, at *2 (S.D. Fla. Feb. 2, 2012) (holding that an agreement's qualification for the merchant exception is sufficiently alleged where, as between merchants, a timely, signed writing specifying the quantity of the good evinces the possibility of a contract); *see also Fertilizantes*, 599 F. Supp. 3d at 1205 (holding that it cannot be determined as a matter of law that no contract exists under the UCC where both parties are merchants and where "the party to be bound does not timely object" to a written agreement).

### B. Promissory Estoppel (Count II)

Meraki next argues that that NE Solar "has not alleged specifically what promise(s) it relied on and cannot show that injustice can be avoided only by enforcing said promise(s)." ECF No. 20 at 8, ¶ 21. The Court is again unpersuaded. A plausible promissory estoppel claim under Florida law requires allegations that "(1) the plaintiff detrimentally relied on a promise made by the defendant; (2) that the defendant reasonably should have expected the promise to induce reliance; and (3) that injustice can be avoided only by enforcement of the promise against the defendant." *Hopkins Pontiac GMC, Inc. v. Gen. Motors LLC*, No. 5:14-cv-00183-RS-EMT, 2015 WL 13760651, at *6 (N.D. Fla. Jan. 20, 2015) (citing *W.R.*

*Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 302 (Fla. 1st DCA 1999)).  Plausible allegations of a promise are "definite as to terms and time." *Hopkins Pontiac GMC, Inc. v. Ally Fin. Inc.*, 60 F. Supp. 3d 1252, 1261 (N.D. Fla. 2014).  NE Solar alleges definite terms and time, more specifically that Meraki "promised to take delivery of and pay for 20,150 modules." ECF No. 18 at 23, ¶ 54. This alone is sufficient but its allegations do not stop there.  Rather, NE Solar qualifies the alleged promise with an allegation as to when it was to be realized. Payment in full was allegedly due "five days before the modules reach[ed] the U.S. Port," with delivery being stalled only because Meraki "fail[ed] to provide NE Solar with payment and Meraki's desired delivery schedule."  *Id.* at ¶¶ 17, 19.  NE Solar also alleges that it can be made whole only through Meraki's payment for and acceptance of the modules at issue. *Id.* at 23, ¶ 60.  The Court finds these allegations sufficiently pled under Florida law.  *See General Motors*, 2015 WL 13760651 at *2, *7 (finding an alleged promise, qualified by the phrase "no later than October 2010," to be sufficiently definite as to terms and time to state a plausible claim for promissory estoppel).

### C. Attorney's Fees (Count III)

Finally, Meraki argues that NE Solar's assertion of a separate cause of action in Count III for attorney's fees pursuant to Fla. Stat. § 772.11 does not comport with

Florida law.[12]  This time, the Court agrees.  "In Florida there is no separate claim for attorney's fees."  *Avante Garde Eng'g & Res. Ltd. v. Nationwide Equip. Co., Inc.*, No. 3:11–cv–525–J–20TEM, 2012 WL 12902720, at *5 (M.D. Fla. May 15, 2012); *see Omnipol, A.S. v. Worrell*, 421 F. Supp. 3d 1321, 1353 (M.D. Fla. 2019) (holding that Count VII of a complaint[13] asserting a claim for attorney's fees pursuant to Fla. Stat. § 772.11 was due to be dismissed for stating a remedy rather than a cause of action); *see also Foley v. Orange Cnty., Fla.*, No. 6:12–cv–269–Orl–37KRS, 2012 WL 6021459, at *7 (M.D. Fla. Dec. 4, 2012) ("[T]here is no need to set out a separate count for . . . damages.").  Rather, "[u]nder Florida law, the inclusion of a demand for attorney's fees in a pleading's 'wherefore' clause or prayer for relief is sufficient to notify one's adversary of a claim for attorney's fees."  *In re Basil St. Partners, LLC*, No. 9:11–bk–19510–FMD, 2013 WL 4461566, at *6 (M.D. Fla. Aug. 19, 2013) (finding that a counterclaim's attorney's fees request in its prayer for relief

---

[12] Florida Statute § 772.11(1) creates a mandatory fee-shifting requirement, providing that a party is entitled to recover attorney's fees if it is determined that the civil theft claim against it is without merit.  Fla. Stat. § 772.11(1) ("The defendant is entitled to recover reasonable attorney's fees and court costs in the trial and appellate courts upon a finding that the claimant raised a claim that was without substantial fact or legal support").  Section 772.11(1), as of September 16, 2024, is preempted by the Airline Deregulation Act, which expressly preempts state regulation of air carrier prices.  *Worldwide Aircraft Serv. Inc. v. Connecticut Gen.  Life Ins. Co.*, 749 F. Supp. 3d 1204, 1209–10 (M.D. Fla. 2024) ("To the extent that Florida Statute § 772.11(1) applies in this case, it is preempted because the statute directly increases the price that an insurer must pay for Jet ICU's air ambulance service.").  The doctrine of preemption does not preclude application of the statute in this state law contract claim.

[13] Counterclaims are also pleadings for the purpose of asserting a request for attorney's fees.  *Green v. Sun Harbor Homeowners' Ass'n, Inc.*, 730 So. 2d 1261, 1263 (Fla. 1998).

was sufficient under Florida law).  NE Solar has pled under the 'wherefore' clauses of Counts I and II its intention to recover attorney's fees, specifically mentioning § 772.11 in its allegations under Count I, thereby adequately putting Meraki on notice of is intent to recover.  It appears the principal deficiency with NE Solar's pleading is its superfluous Count III, dismissal of which has no effect on NE Solar's potential recovery under § 772.11(1) at the conclusion of the litigation.  *See Carrier v. Jest Operating, Inc.*, No: 5:20-cv-95-JSM-PRL, 2023 WL 11910137, at *2, *3 (M.D. Fla. Apr. 28, 2023) ("[A] party cannot waive its right to seek fees and costs under section 772.11."); *Friedman v. Lauderdale Med. Equip. Serv., Inc.*, 591 So. 2d 328, 329 (Fla. 4th DCA 1992) (Section 772.11 "require[s] *only* that [a party] prove that the civil theft claim [against it] is without substantial factual or legal support.") (emphasis added).  Count III will be dismissed.

**Accordingly,**

Plaintiff/Counter-Defendant's Motion to Dismiss Defendant's First Amended Counterclaim, ECF No. 20, is **GRANTED in part and DENIED in part** as follows:

1. Count III is **DISMISSED**.

2. Plaintiff/Counter-Defendant's Motion is **DENIED** in all other respects.

**DONE AND ORDERED** this 18th day of July 2025.


*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**